**Norb J. KONCZAK and Linda Konczak, Plaintiffs-Appellants, Cross-Appellees,**

v.

**Arthur T. TYRRELL, Sheriff of McHenry County, Robert W. Madsen, Captain, Sheriff's Police, McHenry County, and Les Kottke, Sergeant, Sheriff's Police, McHenry County, Defendants-Appellees, Cross-Appellants.**

Nos. 78–2414, 78–2415, 79–1090 and 79–1149.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1979.

Decided July 12, 1979.

Rehearing and Rehearing En Banc Denied Aug. 20, 1979.

Harvey Melinger, Chicago, Ill., for plaintiffs-appellants.

Stephen R. Swofford, Chicago, Ill., for defendants-appellees.

Before PELL, SPRECHER, and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In 1976 plaintiffs Norb J. and Linda Konczak, husband and wife, filed suit in federal district court under 42 U.S.C. § 1983 against defendants Les Kottke, Robert Madsen and Arthur Tyrrell, all members of the McHenry County Sheriff's Department in Illinois, charging deprivations of due process rights springing from an unlawful

arrest.[1] The plaintiffs also charged the police officers with conducting an unlawful search and seizure, and plaintiff Norb Konczak alleged malicious prosecution and unlawful incarceration.[2] In 1978 after a four-day trial the jury returned a verdict in favor of Norb Konczak and assessed $10,000 in compensatory damages and $21,000 in punitive damages. The jury also found in Linda Konczak's favor and awarded her $2,500 in compensatory and $2,500 in punitive damages. Later, the district court denied a general motion by the defendants for judgment notwithstanding the verdict. The court, however, granted that part of the motion which related to the awards of punitive damages declaring that the "plaintiffs wholly failed to produce any evidence" to support an award of punitive damages. The counsel for the plaintiffs then filed a motion for attorney's fees and costs as a "prevailing party" under 42 U.S.C. § 1988, and, in a subsequent brief, requested $13,073.67 in attorney's fees and $1,619.19 in costs. The district court granted counsel $6,573.29 in fees and $1,619.19 in costs.

On appeal the plaintiffs contend that the district court committed error in entering judgment notwithstanding the jury's verdict on the issue of punitive damages because there was ample evidence of willful and wanton misconduct. The plaintiffs also assert that the court erred in not awarding the exact amount of attorney's fees requested or in not holding an evidentiary hearing on the matter. Cross-appealing, the defendants claim that the district court erred in failing to enter a total judgment n.

o. v., asserting there was insufficient evidence to support the jury's verdict. Alternatively, the defendants argue that the plaintiffs are entitled to no more than nominal damages of $1.00 because the plaintiffs failed to prove actual damages. Finally, the defendants assert that either the plaintiffs should receive no attorney's fees because the lawsuit vindicated a private, not a public, interest or the award of attorney's fees should be reduced because the district court judge abused his discretion. We affirm the district court's judgment in all respects. We consider the sufficiency of the evidence issue first so that the case may be placed in a proper perspective.

■ A motion for judgment notwithstanding the verdict "should be denied where the evidence, along with the inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." *Clemons v. Mitsui O.S.K. Lines, Ltd.*, 596 F.2d 746, 748 (7th Cir. 1979); *Hohmann v. Packard Instrument Co.*, 471 F.2d 815, 819 (7th Cir. 1973). Making all reasonable inferences in the light most favorable to the jury's verdict, we believe the evidence at trial established the following facts. The plaintiffs, Norb and Linda Konczak, are married and reside in McHenry County, Illinois, with five children from Norb's previous marriage, two children from Norb and Linda's marriage and Linda's brother, Larry Gibson. On Novem-

1. The Civil Rights Act of 1871 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983.
   In order to recover under Section 1983, the plaintiff must establish both deprivation of a right secured by federal law or the Constitution and action by the defendant under the color of state law. *Adickes v. Kress & Co.*, 398 U.S.

144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An individual who is arrested without probable cause may have grounds for an action under Section 1983. *See Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323 (7th Cir. 1978); *Banish v. Locks*, 414 F.2d 638 (7th Cir. 1969); *Thornton v. Buchmann*, 392 F.2d 870 (7th Cir. 1968).

2. The complaint, as amended, named five other officers as defendants: George Corson, Robert Crabtree, Richard Heisler, Lawrence Maceroux and Robert Sweeney. The trial court dismissed Corson and Maceroux from the case prior to trial and the jury found no liability on the parts of Crabtree, Heisler and Sweeney. Those determinations are not questioned in this appeal.

ber 24, 1975, Norb Konczak called the office of Congressman Robert McClory and complained that his former wife had abused the children from his first marriage and that the McHenry County Sheriff's Department had mistreated him and his family. After sending a letter to the Congressman's office detailing the complaints, Norb Konczak received a telephone call on March 25, 1976, from Michael McCarry, a legislative assistant in Washington, D.C. to Congressman McClory. Immediately after that phone conversation, McCarry called the McHenry City Police Department and informed Sergeant Zujewski that he had just talked with Norb Konczak who lived in the McHenry area and that Konczak stated he was going to kill an officer with a 30.06 rifle. Sergeant Zujewski explained that Konczak, living in an unincorporated area of McHenry County, was outside the city's jurisdiction and that he would notify the Sheriff's Department. The Sergeant then phoned the Sheriff's office and informed Detective Maceroux that an aide to Congressman McClory called stating that Norb Konczak was "going to shoot a policeman." On the basis of this statement, subsequently verified by a direct telephone call to McCarry, and other unspecified information about Konczak's "character," Sheriff Arthur Tyrrell ordered the arrest of Norb Konczak for "threatening" or assaulting a police officer.

Once the order for his arrest was broadcast by radio dispatch, Sergeant Les Kottke and Deputy Robert Sweeney proceeded to the Konczak home early that afternoon, coaxed Norb outside, and placed him under arrest for assaulting a police officer. Leaving the house, Linda Konczak approached her husband. Upon observing a person in a suit heading toward the back door, Norb Konczak told his wife that "somebody was coming to the back door and to go in the house." When Linda Konczak started to return to the house, she was restrained by Officer Kottke. Norb Konczak was subsequently transported in a squad car to the county police station by Officer Sweeney.

Meanwhile, Officer Kottke blocked Linda Konczak's entrance to the house promising her access to her home but only with his accompaniment. She refused. Captain Madsen then arrived at the scene and explained that he wanted consent to search the house for firearms. She again refused. While Linda Konczak was detained outside the house for over two hours, her three youngest children, ages two, five and five, remained unattended in the home. When the mother's two-year-old daughter appeared at a window with red glaze, a lead substance, on her face and the mentally retarded daughter, who was also denied access to the house, could wait no longer to visit the bathroom, Linda consented.

Linda Konczak escorted Captain Madsen to a bedroom, opened a drawer in the room and revealed a loaded .22 caliber Stern Luger.[3] Madsen took the firearm. In fact, her brother, Larry Gibson, owned the pistol, lived in the Konczak home in the bedroom where the gun was located, and possessed an owner's identification card at the time.

Norb Konczak was imprisoned in the county jail until that evening and subsequently was transported to Elgin State Hospital. The petition for hospitalization alleged that he was afflicted with a mental disorder and was likely to physically harm others, evidenced by the act of calling his Congressman's office saying that "he was going to kill a policeman." After a lengthy examination by a psychiatrist, Norb Konczak was found needing neither mental treatment nor hospitalization. About 2:30 a. m. on March 26, 1976, he was transported from the hospital back to the county jail. Later in the morning he appeared before a judge and was released on bond.

Norb Konczak was charged with disorderly conduct for threatening to shoot a police officer in violation of Ill.Rev.Stat. ch. 38, § 26–1(a)(2), and this criminal complaint was later amended to a charge of disorderly conduct under Ill.Rev.Stat. ch. 38, § 26–

---

**3.** Linda Konczak admitted during the trial that there was also a 30.06 rifle in the house when Captain Madsen searched the home.

1(a)(1).[4] He was also charged with the crime of possession of a firearm without a firearm owner's identification card in violation of Ill.Rev.Stat. ch. 38, § 83–2(a).[5] Several months after his arrest, another criminal complaint for disorderly conduct was lodged against Norb Konczak under Ill.Rev. Stat. ch. 38, § 26–1(a)(1) for telling his wife at the time of his arrest to "run in the house and get the rifle."[6] Later, a jury acquitted Norb Konczak on the charges of disorderly conduct for saying "run in the house and get the rifle" and possession of a firearm without an owner's identification card. The other charge of disorderly conduct for threatening to shoot a police officer was dismissed.

Considering the evidence in the light most favorable to the plaintiffs, we conclude that it was sufficiently probative for jurors to fairly and impartially reach different conclusions on the question of whether Sheriff Tyrrell, Captain Madsen and Sergeant Kottke violated the plaintiffs' constitutional rights. The district court therefore properly denied the general motion for judgment n. o. v.

■ Turning to the other issues, we consider next the defendants' assertion that the plaintiffs are entitled to no more than nominal damages of $1.00 because the plaintiffs failed to prove actual damages. The jury had awarded Norb and Linda Konczak $10,000 and $2,500, respectively, in compensatory damages. Following *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), this circuit held that a county official may be liable for damages under Section 1983 only if he "acted with an impermissible motivation or with such intentional or reckless disregard of the plaintiff's clearly established constitutional rights that his action cannot be reasonably characterized as being in good faith." *Fulton Market Cold Storage Co. v. P. J. Cullerton*, 582 F.2d 1071, 1080 (7th Cir. 1978). See also *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The defendants do not launch an attack on the jury's verdict armed with the test of *Wood v. Strickland*. Rather, the officers charge that under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court requires that actual damages must be proven for every violation of a constitutional right. The defendants misread the case. In *Carey v. Piphus* the Supreme Court held that where a plaintiff has proven a denial of procedural due process without proving any actual injury, he may only recover nominal damages. *Id.* at 266–67, 98 S.Ct. 1042. The Court, however, distinguished procedural constitutional violations from substantive ones such as those asserted by the plaintiffs here. *Id.* at 264–65, 98 S.Ct. 1042. In any event, we believe the plaintiffs presented sufficient evidence of actual damages in this case. The jury could have properly found that the plaintiffs suffered a loss in earnings of $576 and other less quantifiable damages in the form of mental distress, humiliation, loss of reputation, and other general pain and suffering resulting from the arrest, detention, search and seizure, imprisonment, confinement to a mental institution, and prosecution of three criminal complaints. The compensa-

4. Section 26–1(a)(1) provides:
   (a) A person commits disorderly conduct when he knowingly:
   (1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace.
   Before the Illinois Supreme Court declared Section 26–1(a)(2) unconstitutionally overbroad in *People v. Klick*, 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (1977), the statute also provided that "[a] person commits disorderly conduct when he knowingly: . . . (2) [w]ith intent to annoy another makes a telephone call, whether or not conversation thereby ensues." Ill.Rev.Stat. ch. 38, § 26–1(a)(2).

5. Section 83–2(a) provides:
   No person may acquire or possess any firearm or any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card previously issued in his name by the Department of Law Enforcement under the provisions of this Act.

6. Although Norb and Linda Konczak testified that during his arrest the husband told his wife that "somebody was coming to the back door and to go in the house," the police contended that he shouted "run in the house and get the rifle."

tory awards were supported by the evidence.

Penultimately, we consider the plaintiff's contention that the district court erred in granting the defendant's motion for judgment notwithstanding the verdict on the issue of punitive damages. The jury had awarded Norb and Linda Konczak $21,000 and $2,500, respectively, in punitive damages. This circuit has stated that "[p]rovided certain aggravating circumstances are shown, punitive damages are recoverable under federal law in a § 1983 action." *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974). *See also Morales v. Haines*, 486 F.2d 880, 882 (7th Cir. 1973). The Supreme Court recently noted in *Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978), that punitive or exemplary damages may be awarded in appropriate cases under Section 1983 with the specific purpose of deterring or punishing violations of constitutional rights and commented that there the district court specifically found that the defendants "did not act with a malicious intention to deprive [plaintiffs] of their rights or to do them other injury." In assessing punitive damages, many of the courts of appeals also focus on whether the defendant acted with malicious intent. *See Morrow v. Igleburger*, 584 F.2d 767, 769 (6th Cir. 1978); *Silver v. Cormier*, 529 F.2d 161, 163–64 (10th Cir. 1976); *Caperci v. Huntoon*, 397 F.2d 799, 801 (1st Cir.), *cert. denied*, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968). *See generally Stengle v. Belcher*, 522 F.2d 438, 444 n. 4 (6th Cir. 1975), *cert. dismissed*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976); *Mansell v. Saunders*, 372 F.2d 573, 576 (5th Cir. 1967); *Basista v. Weir*, 340 F.2d 74, 84–88 (3d Cir. 1965).

■ In the present case the district court declared:

> The court finds that the evidence, viewed in the light most favorable to plaintiffs, with all reasonable inferences drawn in

their favor, was such that reasonable men in the fair and impartial exercise of judgment could not have concluded that any of the defendants was guilty of wilful and wanton misconduct toward either plaintiff. Indeed, plaintiffs wholly failed to produce any evidence to support a finding of wilful and wanton misconduct.

We have examined the record and, viewing the evidence and making reasonable inferences in the light most favorable to the plaintiffs, we conclude that there is simply no evidence of aggravating circumstances or of the defendants acting with malicious intent upon which the jury could award punitive damages. In fact, the defendants permitted Norb Konczak, at the time of his arrest, to cross the street, borrow a cigarette from his brother-in-law and calm his wife on the porch before he was taken to the police station. Although Linda Konczak was detained, the defendants allowed her to talk to her three children through a window and thus hold them by the window. Norb Konczak conceded that there was no abusive conduct by the police officers. The district court properly granted the motion for judgment n. o. v. on the issue of punitive damages.

Last, we turn to the assertions surrounding the district court's award of fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[7] The plaintiffs' attorney filed a post trial motion as attorney for the "prevailing party" under Section 1988 requesting $24,150.50 in attorney's fees and $2,333.25 in costs. After the defendants filed a lengthy brief opposing the motion, plaintiffs' counsel submitted an extensive brief and, eliminating "questionable time," reduced his request to $13,073.67 in attorney's fees and $1,619.19 in costs. Noting that both sides had briefed the motion, the district court reviewed the plaintiffs' schedule of charges, found that many of the charges were overstated and granted counsel $6,573.29 in fees and all of the re-

---

7. Section 1988 provides in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . ., the court, in

its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

quested costs. The plaintiffs argue that the court erred in not granting plaintiffs' counsel the attorney's fees requested or in reducing the requested amount of fees without first conducting a hearing. The defendants do not challenge the finding that the plaintiffs were the "prevailing party," but they do claim that either the plaintiffs should receive no attorney's fees because the lawsuit vindicated a private, not a public, interest or that the district court judge abused his discretion in not further reducing the award of attorney's fees. We do not find the arguments of either side convincing.

Considering the depth of the briefing, a hearing on the attorney's fees was unnecessary. Also, the results obtained from a decision correcting violations of civil rights is merely one of factors considered by district courts in arriving at reasonable fee awards. *Waters v. Wisconsin Steel Works of International Harvester Co.*, 502 F.2d 1309, 1322 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974). *See also Perez v. University of Puerto Rico*, 600 F.2d 1, 2 (1st Cir. 1979). Disposing of the remaining arguments, we note that the Congress plainly provided in the language of Section 1988 and this court clearly stated in *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979), that whether to award attorney's fees is within the sound discretion of the district court. We stated, however, that the trial court's discretion is narrow because "a prevailing plaintiff should receive fees almost as a matter of course." *Id.; Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978). *See also Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); S.Rep.No.94–1011, 94th Cong., 2d Sess. 4 *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5912. In the present case the defendants admit *sub silentio* that the plaintiffs prevailed and an award of attorney's fees should follow. The reasonableness of the award, furthermore, rests within the sound discretion of the district court. *Waters v.*

*Wisconsin Steel Works of International Harvester Co.*, 502 F.2d at 1322; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717. There was no abuse of discretion here.

For the above reasons the judgment of the district court is affirmed.

AFFIRMED.