Rollins FREEMAN, Plaintiff-Appellant,

v.

Gayle FRANZEN, et al., Defendants-Appellees.

Rollins FREEMAN, Plaintiff-Appellee,

v.

Alfred BRANCHE, Defendant-Appellant.

Nos. 81–1746, 81–1747 and 81–2035.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1982.

Decided Dec. 15, 1982.

Rehearing Denied Feb. 1, 1983.

486

Gerald A. Block, Bannister, Block & Spevack, Chicago, Ill., for Freeman.

Thomas A. Ioppolo, Atty. Gen. of Ill., Chicago, Ill., for Branche and Franzen, et al.

Before WOOD, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and MORGAN,* Senior District Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

██ The plaintiff, Rollins Freeman, a former inmate at the Stateville Correctional Center in Joliet, Illinois, in a jury trial recovered $2,500 compensatory and $1,000 punitive damages against defendant Alfred Branche, and $250 compensatory damages each against defendants Jacobazzi and Bass, all defendants being correctional officers. Thereafter, the trial court granted in part defendants' motions for judgment notwithstanding the verdicts and set aside all awards except the compensatory damage award against Branche. In addition, the court awarded plaintiff $12,000 in attorneys' fees and costs. Branche appeals from the verdict of compensatory damages and the award of attorneys' fees. The plaintiff appeals from the judgment notwithstanding the verdicts as to each defendant.[1]

## I.

██ The district court, in our judgment, erred in entering judgment NOV for Bass and Jacobazzi. A judgment NOV should only be granted when "without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict ...." *Brady v. Southern Railway Co.,* 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). The motion "should be denied where the evidence, along with the inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." *Konczak v. Tyrrell,* 603 F.2d 13, 15 (7th Cir.1979), cert. denied, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980) (quoting *Clemons v. Mitsui O.S.K. Lines, Ltd.,* 596 F.2d 746, 748 (7th Cir.1979)). The parties introduced evidence which painted widely disparate accounts of the underlying incident; for the most part, the evidence raised questions of credibility best left to the jury to resolve.

Freeman testified that the defendant Lt. Harris woke him from a sound sleep and, along with two other officers unknown to the plaintiff, pulled him, partially dressed, from his cell. He asserted that the two unidentified officers twisted his arms behind his back, lifted him to his toes, and forced him down the hall. He further testified that, without provocation, a guard, defendant Lowell Rooffener,[2] hit him twice in the forehead.

In contrast to Freeman's account, Lt. Harris, the prison officer supervising transfers in the plaintiff's cellblock, testified

---

* The Honorable Robert D. Morgan, Senior District Judge for the Central District of Illinois, is sitting by designation.

1. The plaintiff argues that the district court erred in granting the judgment NOV because the defendants failed to move for a directed verdict at the close of the case, as Fed.R. Civ.P. 50(b) requires. In granting the judgment NOV, the district court expressly found the defendants had moved for a directed verdict in the jury instruction conference after the close of their case.

Both parties attended the conference, which was held without a court reporter present. The district court dismissed George May, an additional defendant, from the case at that time. The plaintiff concedes the defendants' attorney moved for a directed verdict at the conference but argues it applied only to May and excluded the other defendants. Nothing in this argument dispels the district court's express finding

otherwise. Courts liberally view what constitutes a motion for a directed verdict, *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 576 (7th Cir. 1976); *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 585 F.2d 821, 825 (7th Cir.1978), and the fact that the motion was unrecorded does not affect the defendants' ability to preserve the issue for post-verdict motions, *Moran v. Raymond Corp.,* 484 F.2d 1008, 1014 (7th Cir.1973), cert. denied, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974), or appeal. Moreover, one lawyer from the Illinois Attorney General's office represented all defendants at trial. He moved for a directed verdict on behalf of all defendants at the close of the plaintiff's evidence. It is difficult to believe that he abandoned that strategy for all defendants except May after the presentation of the defendants' evidence.

2. Defendant Rooffener was found not guilty.

that Freeman was dressed, awake, and complaining that he was ill, yet refusing to leave his cell. According to Harris, the plaintiff agreed to cooperate only after Harris promised to call a nurse. Harris testified that when he turned his back, however, the plaintiff began struggling with two guards who were attempting to escort him to the new cell.

The parties disputed the roles Branche, Jacobazzi, and Bass played in the incident. The plaintiff testified that after Rooffener punched him, six or eight guards (including the defendants Jacobazzi and Fleming) converged on him and simultaneously hit and kicked him. Freeman estimated he was hit at least twenty-five times. Curtis Cottrell, a prison guard present at the scene, confirmed that the guards struck Freeman at least ten times. After the group of assaulters moved the plaintiff towards a stairway, the plaintiff claimed that Jacobazzi choked him while the other guards wrestled with him and that Bass and Jacobazzi repeatedly kicked him in the back. Cottrell, corroborating portions of that testimony, stated that between five and eight guards wrestled with the plaintiff and treated him "pretty roughly." Though Cottrell could not identify most of the guards, he testified that Jacobazzi hit and kicked Freeman. Freeman also testified that, while carrying him up three flights of steps to the new cell, Bass and Jacobazzi dragged his hips and back across the metal steps in deliberate disregard of his physical safety. Bass and Jacobazzi denied that contention. Prison personnel filmed this portion of the incident and the jury viewed the videotape twice during trial and once during deliberations.

The defendants assert that they used neither excessive nor unjustified force transferring the plaintiff between cells. All of the defendants testified at trial; each of them either denied personally striking the plaintiff and seeing other guards hit him, or maintained that all their blows followed the plaintiff's assaults on correctional officers. Several defendants testified that plaintiff was kicking and swinging wildly during the incident. Plaintiff acknowledged grabbing defendant Branche's jacket.

The defendants' cumulative testimony indicates that the plaintiff was hit four times. Rooffener admitted hitting Freeman's arms twice to break his grasp on Branche's jacket. Branche testified that he punched Freeman twice in the face with middle or average force; first in retaliation after Freeman hit him and again to protect himself after Freeman tried to grab him. All of the other defendants denied striking the plaintiff.

In light of the divergent accounts of the incident, there existed a material issue of fact. The defendants urge, however, that, considering the plaintiff's lack of credibility, no reasonable person could have believed his testimony. Aside from the fact that Cottrell corroborated many portions of plaintiff's testimony, the evidence on a motion to set aside a verdict must be considered in the light most favorable to the non-moving party, *Continental Ore Co. v. Union Carbide & Carbon Co.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Konczak,* 603 F.2d at 17, and without regard to matters of credibility, *Brady,* 320 U.S. at 479, 64 S.Ct. at 234; *see generally* 5A J. Moore & J. Lucas, Moore's Federal Practice 50.02[1] at 50–25 (2d ed. 1982). The plaintiff's version of the events was not patently absurd. Plaintiff's credibility was a question for the jury to decide.

In defending the district court's decision to set aside the verdict, the defendants focus on a note the jury attached to the verdict. The jury originally attempted to return a verdict without assessing compensatory damages against Bass, Jacobazzi, and Branche. The jury recommended that other modes of discipline such as reprimand and suspension be substituted for the damage awards. The district court refused to accept the verdict and returned the jurors for further deliberations, instructing them, "I want to tell you two things: First of all, if you are to assess any compensatory and punitive damages, that may be done only in terms of dollars. Any other suggestions or thoughts you have would be welcome, but

the verdict must be in the manner that I suggest." The jury then returned a verdict assessing monetary damages against the defendants. The jury, however, attached another note to the verdict. The note stated:

> We, the jury, because of reasonably [sic] doubt and a lack of sufficient evidence, recommend Mr. Jacobazzi and Mr. Bass, or any other correction officers involved in moving residents or prisoners in large scale security checks, should be cautioned and instructed in the following manner: Specifically speaking of the manner in which a person is carried upstairs within Stateville Correction [sic] Center, caution and care should be taken to insure safe and humane methods of [sic] residents or prisoners so no bodily harm or fear is experienced by them.

■ Ordinarily a recommendation from the jury is disregarded, *Shelton v. United States,* 235 F.2d 951, 954 (4th Cir.1956), and does not impeach the validity of the verdict, *Rogers v. United States,* 422 U.S. 35, 38, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975). The defendants argue, that because the jury prefaced its message "because of reasonably [sic] doubt and lack of sufficient evidence," that the note indicates the jury awarded damages without finding liability. The defendants assert that the district court's direction to the jury induced that result.

■ Despite the defendants' argument, there was no error in the district court's instruction. *See generally United States v. Ronder,* 639 F.2d 931 (2d Cir.1981). The district court merely informed the jury that monetary damages were the only remedy it could award if it found liability. Apparently satisfied with this explanation, the defendants did not object to the instruction at the time or request further explanatory instructions.

■ The jury's finding of liability is not necessarily inconsistent with the message attached to the verdict. The message addressed only Bass's and Jacobazzi's conduct in transporting the plaintiff up the stairs. The jury had adequate evidence to find Bass and Jacobazzi liable for beating the plaintiff, without regard to that part of the affair. Consequently, the jury's finding of liability was not necessarily premised on the defendants' conduct in carrying Freeman up the stairs.

■ In any event, speculation over the note's meaning cannot provide a basis for entering judgment NOV. The district court may enter judgment NOV only when a full evaluation of the evidence presented at trial demonstrates that reasonable men could not reach different conclusions about the verdict. *Konczak,* 603 F.2d at 17. Here the evidence adequately supported the verdict.

■ The district court also set aside the punitive damage award against Branche. Punitive damages may be awarded in a civil rights action under Section 1983 either upon a showing of "aggravating circumstances" or the defendant's "malicious intent" to deprive the plaintiff of his constitutional rights or to injure him. *Konczak,* 603 F.2d at 18. The evidence presented here, though close, is sufficient to support the jury's finding the satisfaction of that standard. Branche supervised the transfer of all prisoners during the search operation. He was not present when the incident erupted and was notified only that Freeman was struggling with the guards attempting to move him. When Branche arrived, Freeman was wrestling with at least four guards. Branche admitted hitting Freeman twice in the face with a closed fist while wearing a large, metal ring, and while the other guards restrained Freeman. Branche's participation in the incident and Freeman's facial wounds were both videotaped. Aggravating the situation, Branche permitted Freeman's assaulters to continue escorting Freeman without his supervision. These facts and circumstances adequately supported the verdict.

Finally, insufficient reason exists to presume, as defendants argue, that the message from the jury tainted the verdict against Branche. As mentioned, we find the note did not invalidate the verdicts against Bass and Jacobazzi. Because the

jury message did not mention Branche, there exists even less reason to suspect that the jury was confused or misled respecting Branche's liability, or that Branche was denied a fair trial. Accordingly, the district court correctly denied Branche's motion for a new trial.

## II.

The defendants also cross-appeal from the finding of liability. The defendants argue that the district court erred in instructing the jury that the plaintiff could recover from a deprivation of liberty without due process of law. They assert that the substantive due process clause of the Fourteenth Amendment does not provide prisoners a cause of action for physical injury from the excessive use of force by prison guards. The defendants argue that a prisoner's cause of action exists only under the Eighth Amendment. As support, the defendants assert that the Supreme Court established a dichotomy between prisoners and other civil rights plaintiffs in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

In those cases, the Court held that the Eighth Amendment applied exclusively to individuals actually incarcerated and did not protect pretrial detainees, *Bell,* 441 U.S. at 535 n. 16, 99 S.Ct. at 1872 n. 16; or school children, *Ingraham,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–1413 n. 40, 51 L.Ed.2d 711. In both cases, the Court held that unincarcerated plaintiffs must assert claims of unjustified physical injury by state agents under the Fourteenth Amendment. Because the Court held in *Bell* and *Ingraham* that the Eighth Amendment applies only to prisoners, however, it does not

follow that the Fourteenth Amendment does not.

The defendants find additional support for their argument in several Supreme Court decisions which analyze the conditions of prison confinement exclusively under the cruel and unusual punishment standard of the Eighth Amendment and which do not consider whether those conditions violated the Fourteenth Amendment. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Although there is no indication that the plaintiffs in those cases raised a claim under the Fourteenth Amendment, the defendants argue that the cases demonstrate further that the Supreme Court considers a prisoner's cause of action for excessive use of force lies pursuant to the Eighth Amendment to the exclusion of the Fourteenth Amendment.

The Second Circuit rejected an identical argument in *Martinez v. Rosado,* 614 F.2d 829 (2d Cir.1980). That court held that a prisoner's complaint, which alleged that an unprovoked beating by a prison guard unconstitutionally deprived him of liberty under the Fourteenth Amendment, stated a claim under 42 U.S.C. § 1983. Following *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), the court in *Martinez* rejected the argument that the plaintiff did not have a cause of action under the Fourteenth Amendment.[3] Other circuits have reached the same conclusion. *Tolbert v. Bragan,* 451 F.2d 1020 (5th Cir.1971) (per curiam); *Wiltsie v. California Department of Corrections,* 406 F.2d 515, 517 (9th Cir. 1968). *See also Curtis v. Everette,* 489 F.2d 516 (3d Cir.1973).

Nor does a finding of liability here, as defendants claim it will, transform Sec-

---

**3.** In *Johnson v. Glick,* the Second Circuit stated:

> [B]oth before *and after* sentence, constitutional protection against police brutality is not limited to conduct violating the specific command of the Eighth Amendment.... *Rochin v. California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183] (1952), must stand for the

proposition that, quite apart from any "specific" of the Bill of Rights, application of undue force by law enforcement officers deprives a suspect of liberty without due process of law.

481 F.2d at 1032 (citations omitted) (emphasis added).

tion 1983 into a "font of tort law," as the Supreme Court declined to do in *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). In *Johnson v. Glick,* the court noted that a prison guard's liability for the use of excessive force under 42 U.S.C. § 1983 is not co-extensive with common law tort liability for battery. *Cf. Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (false imprisonment); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (medical malpractice). The *Johnson* court stated:

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

481 F.2d at 1033. Consequently, the court in *Johnson* held that the district court in determining whether the plaintiff established a deprivation of liberty under § 1983 should consider several factors, including the

> need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033. Here, the district court below did not err in instructing the jury that the law allowed a prisoner to recover damages for a deprivation of liberty without due process of law.

 The defendants also contend that the district court failed to instruct the jury on the meaning of two phrases, "unlawful attack" and "lawful authority," used in the jury instructions. The court, however, instructed the jury that prison guards under state law had lawful authority to use the physical force necessary to protect themselves from physical harm and to enforce an inmate's compliance with valid commands. The court further instructed the jury that the defendants acted unlawfully if they used greater force than necessary to accomplish a lawful purpose. Consequently, considering the instructions as a whole, the district court adequately and fairly instructed the jury.

 The defendants further argue that the instruction at issue encouraged the jury to place a pecuniary value on the constitutional right lost. Contrary to the defendants' contention, the instruction did not direct the jury to award compensation for the inherent value of the constitutional right itself. The instruction merely told the jury to consider as an "element of damages" the fact that the rights lost were constitutional rights.

The district court instructed the jury that if it found the defendants liable, the jury was to consider the nature, extent, and duration of the plaintiff's physical injury as well as his humiliation, mental distress, and general pain and suffering in measuring damages. The district court further instructed the jury to account for the "violation of [the plaintiff's] constitutional rights" in its assessment.[4] Having objected to this last portion of the instruction at trial, the defendants argue on appeal that it is directly contrary to the Supreme Court's decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

In *Carey,* the Court rejected the argument that monetary damages may be awarded for the loss of constitutional rights because the rights are "valuable in and of themselves," *id.* at 254, 98 S.Ct. at 1047,

---

4. In full, the district court instructed the jury: If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the wrongful conduct of the defendant or defendants. One, the nature, extent, and duration of the injury. Two, general pain and suffering. Three, humiliation. Four, mental distress. Five, the violation of the constitutional right.

holding that only "actual" injury is compensable under Section 1983. The Court stated that the

> basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights.... Rights, constitutional or otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.

*Id.* The Court concluded that the policy of deterrence of constitutional violations, however strong, did not justify a departure from "[t]he cardinal principle of damages in Anglo-American law" that damages are to provide *"compensation for the injury caused to the plaintiff by defendant's breach of duty." Id.* at 254–55, 98 S.Ct. at 1047 (quoting 2 F. Harper & F. James, *Law of Torts*, § 25.1 at 1299 (1956) (emphasis in original)).

Although *Carey* involved purely procedural due process rights,[5] the lower courts in subsequent decisions have extended the reasoning in *Carey* to rule that plaintiffs may recover compensatory damages solely for actual injuries in Section 1983 cases involving a denial of *substantive* due process rights. *See, e.g., Familias Unidas v. Briscoe,* 619 F.2d 391, 402 (5th Cir.1980); *Morrow v. Ingleburger,* 584 F.2d 767, 769 (6th Cir.1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979); *Davis v. Village Park II Realty Co.,* 578 F.2d 461, 463 (2d Cir.1978). Following this course, we recently held in *Kincaid v. Rusk,* 670 F.2d 737 (7th Cir.1982), that a pretrial detainee who failed to prove actual injury from the unconstitutional restriction on his access to reading material in jail could recover only nominal damages. "Because the purpose of section 1983 is to compensate for the injuries resulting from a deprivation of constitutional rights, [the plaintiff] must demonstrate that the restrictions found unlawful

here caused some compensable injury." *Id.* at 745–46; *see also Endicott v. Huddleston,* 644 F.2d 1208, 1216–17 (7th Cir.1980) (denial of procedural due process), and *Busche v. Burkee,* 649 F.2d 509, 519 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (a case involving procedural due process).

■ The instructions at issue neither encouraged nor allowed the jury to award Freeman damages in the absence of actual injury. Instructing the jury to assess damages according to the nature, extent, and duration of the physical injury, general pain and suffering, humiliation, and mental distress, and the violation of the plaintiff's constitutional rights, the district court merely distinguished between a common law action for battery and a violation of civil rights to ensure that the plaintiff received full compensation for his injuries. Physical injury as well as intangible injuries, such as pain and suffering, personal humiliation, mental distress, and embarrassment are compensable injuries under Section 1983. *Kincaid,* 670 F.2d at 737 n. 16; *Busche,* 649 F.2d at 519; *Baskin v. Parker,* 602 F.2d 1205, 1209 (5th Cir.1979); *Hostrop v. Board of Junior College District No. 515,* 523 F.2d 569, 579–80 (7th Cir.1975); *Seaton v. Sky Realty Corp.,* 491 F.2d 634, 636 (7th Cir.1974). The evidence at trial showed the guards repeatedly punched and kicked Freeman in the back, face, and testicles. Freeman testified that after the beating his entire body hurt and that he was taken to the prison hospital for treatment. Though the parties agreed that Freeman suffered no permanent eye injury, he complained of continuing pain.

■ The jury has wide latitude in assessing damages in order to fairly compensate a plaintiff in a civil rights action for physical and mental injuries. *Herrera v. Valentine,* 653 F.2d 1220 (8th Cir.1981). In light of the plaintiff's testimony and the

---

**5.** The plaintiff in *Carey* was a public high school student suspended from classes without a hearing. In an action for monetary damages under § 1983, the student alleged that the fail-

ure to allow him an opportunity to defend against the accusations which caused the suspension deprived him of his constitutional right to procedural due process.

number of guards involved, the damages awarded *Freeman* were certainly not excessive.

The defendants argue, alternatively, that even if the district court did not direct the jury to award damages for the inherent value of the substantive constitutional rights lost, the instruction permitted the jury to presume actual damages without direct proof of their existence. The plaintiff's testimony at trial established that he suffered actual, compensable injury as a consequence of the beating. Thus, the evidence amply supports the award of damages without the use of a presumption.

## III.

Finally, the district court awarded the plaintiff $12,000 in attorneys' fees under 42 U.S.C. § 1988. The plaintiff originally requested $22,000 in fees representing 346 hours of work. In reaching this conclusion, the district court explained only that it had considered the factors laid out in *Muscare v. Quinn,* 614 F.2d 577 (7th Cir.1980).

The defendants do not dispute that the plaintiff is a "prevailing party" entitled to fees as a matter of course unless "special circumstances" dictate otherwise. *Harrington v. DeVito,* 656 F.2d 264, 268 (7th Cir. 1981); *Konczak,* 603 F.2d at 19. They contest only the reasonableness of the amount of fees awarded.

The district court, in its discretion, may set the amount of attorneys' fees awarded. That determination may be set aside on appeal only for a clear abuse of discretion. *Konczak,* 603 F.2d at 19. Some articulation of the reasons behind the district court's decision is necessary, however, for effective appellate review. While a failure to articulate precise reasons to support an award of fees does not indicate *a fortiori* that the district court abused its discretion, *Harrington,* 656 F.2d at 269, here

the district court supplied no reasons to explain its decision. It is not the role of this court to speculate on the reasons which may have supported the decision. Some explanation of the decision and consideration of the current result in the case is necessary before we can address the defendants' arguments that the district court abused its discretion in awarding $12,000 in attorneys' fees. Consequently, we remand this question to the district court for additional consideration.[6]

For the foregoing reasons, the district court's entry of judgment NOV for defendants Bass and Jacobazzi is reversed and the jury verdicts are reinstated. The setting aside of punitive damages against defendant Branche is reversed. The denial of defendant Branche's motion to set aside the judgment against him for compensatory damages is affirmed. The case is remanded on the issue of attorneys' fees.

---

**6.** In light of this disposition, we decline now to review the evidence presented to the district court on the issue of attorneys' fees and to consider the defendants' argument that the district court abused its discretion by not requiring the plaintiff's lawyers to produce original billing records to substantiate their claims about the number of hours actually worked on the case.