Alan Wayne VENUS, Plaintiff,

v.

David GOODMAN, David Steiner, and W.C. Gaunce, Defendants.

Alan Wayne VENUS, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 80–C–495, 81–C–609.

United States District Court, W.D. Wisconsin.

Jan. 26, 1983.

John L. Cates, Madison, Wis., for plaintiff.

John R. Byrnes, U.S. Atty. by Richard E. Cohen, Asst. U.S. Atty., Madison, Wis., for defendants.

## ORDER

SHABAZ, District Judge.

These are two cases consolidated for trial. In the first, plaintiff Alan Wayne Venus

instituted suit against various officials and employees at the Federal Correctional Institution, Oxford, Wisconsin (Oxford). Plaintiff alleged that his medical treatment at Oxford violated his rights under the Eighth Amendment. In the second suit, plaintiff filed under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, asserting that the same facts alleged in the constitutional case demonstrate negligence on the part of medical personnel at Oxford.

After several defendants in the constitutional case were dismissed as a result of motions before trial, both cases came to trial in November, 1982. The constitutional case was tried to a jury at the same time that the tort claim was tried to the Court. On November 19, 1982, the jury found defendants David Goodman, David Steiner and W.C. Gaunce liable for deliberate indifference to plaintiff's serious medical needs, in violation of the Eighth Amendment. After hearing the evidence on damages, the jury, on November 23, 1982, answered the following special interrogatories:

1. What sum of money will fairly and adequately compensate plaintiff for the injuries proximately caused by the conduct of each of the defendants?

| | |
|---|---|
| $ 2,000 | David Goodman |
| $ 500 | David Steiner |
| $ 2,000 | W. C. Gaunce |

(Total: $ 4,500)

2. Is the plaintiff entitled to punitive damages?

ANSWER:     Yes
               (Yes or No)

If so, what sum of money, if any, should be assessed as punitive damages against each of the defendants?

| | |
|---|---|
| $ 6,500 | David Goodman |
| $ 1,000 | David Steiner |
| $ 3,000 | W. C. Gaunce |

(Total: $10,500)

1. *See* Rule 58(2), Federal Rules of Civil Procedure.

On November 26, the Court approved this judgment as to form,[1] also ordering that defendants be taxed with costs and reasonable attorney's fees. The Court also entered judgment in the tort claim action for $15,000 plus costs.[2] On December 10, 1982, the Court expanded upon the findings of fact and conclusions of law in the tort claim action.

The case is now before the Court on a series of post-verdict motions.

I. *Defendants' Motion for Judgment Notwithstanding the Verdict*

■ The individual defendants argue that the evidence is insufficient to support a jury verdict that they were deliberately indifferent to plaintiff's serious medical needs, the prerequisite for liability for medical mistreatment under the Eighth Amendment. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). This Court recently wrote:

> In deciding whether a verdict is supported by the evidence, the Court must apply the following standard:
>
> > [T]he motion should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions.
>
> *Kolb v. Chrysler Corp.,* 661 F.2d 1137, 1140 (7th Cir.1981); *Funk v. Franklin National Life,* 392 F.2d 913, 915 (7th Cir. 1968).

*Huebschen v. Dep't of Health and Social Services,* 547 F.Supp. 1168, 1176 (W.D.Wis. 1982).

In the tort claims action, the Court found the following facts:

1. Plaintiff Alan Wayne Venus is a former inmate at the Federal Correctional Institution, Oxford, Wisconsin (Oxford).

2. The judgment in the tort claim was not in addition to the judgment in the constitutional case. Instead, a single payment of $15,000 would have satisfied both judgments.

David Goodman was at all relevant times the Chief Medical Officer at Oxford. David Steiner was at all relevant times a Physicians' Assistant at Oxford. W.C. Gaunce was and continues to be the Hospital Administrator at Oxford.

2. On November 27, 1979, while incarcerated at the Milwaukee County Jail, plaintiff broke the fourth metacarpal in his right hand as a result of an altercation. As a result of the injury, plaintiff was transported to the Milwaukee County Hospital.

3. On December 6, 1979, Dr. Schwab, an orthopedic surgeon, inserted an intramedullary pin into the plaintiff's broken metacarpal. Plaintiff also received certain instructions from the Hospital for postoperative care.

4. Upon his return to Oxford, he conveyed these instructions to Mr. Gaunce. Those instructions included written directions from the Milwaukee County Hospital that records should be obtained and other information concerning postoperative care. Mr. Gaunce disregarded the directions and did not request that those records be provided.

5. On occasions between December 17, 1979 and January 3, 1980, plaintiff complained to Mr. Steiner that he wished assistance from a physician. Despite these complaints, plaintiff was not examined by a doctor until January 3, 1980.

6. On January 3, 1980, plaintiff was examined by Dr. Goodman and by Dr. Donald Taylor, an orthopedic specialist. Dr. Goodman admitted at trial that he was not familiar with the type of injury the plaintiff suffered, that he was not an orthopedic specialist, that he consulted Dr. Taylor in orthopedic cases, and that Dr. Taylor came to the prison hospital once every three or four weeks.

7. On January 4, 1980, plaintiff was assigned to work in the prison cable factory. Plaintiff complained to Mr. Gaunce about that placement. Mr. Gaunce had the authority to recommend a change in assignment. Mr. Gaunce did not at that time act to have plaintiff removed from the cable factory job, although he did not indicate that plaintiff would be required to perform any particular task.

8. Between January 4 and January 8, 1980 plaintiff complained to Mr. Steiner and to Physicians' Assistant Gary Umland of discomfort to his wrist. Plaintiff was not taken or referred to a specialist, but was examined instead by Dr. Goodman on January 10, 1980. Dr. Goodman deferred any diagnosis as a result of his examination.

9. Between January 10 and January 19, 1980, plaintiff made several requests for medical care. He received no care during that time.

10. On January 19, 1980, the extensor tendon leading to plaintiff's right index finger broke.

11. Plaintiff was seen by Dr. Goodman on January 22, 1980. Dr. Goodman did not provide plaintiff with adequate treatment. Although uncertain of plaintiff's problem, he did not consult with or arrange for plaintiff to see a specialist until January 31, 1980.

12. On that date, plaintiff was taken to Divine Savior Hospital, Portage, Wisconsin for removal of the intramedullary pin. X-rays were taken to locate the wire, which was surgically removed through the soft tissues. The wound was then closed. Dr. Taylor noted a considerable amount of free fluid, as well as some synovial inflammation. A late rupture of the extensor indicis tendon was also noted. Plaintiff was then returned to Oxford.

13. Dr. Taylor recommended surgical correction of the extensor tendon lesion. Plaintiff was accepted at the Springfield Medical Center for Federal Prisoners on Tuesday, February 5, 1980.

14. Plaintiff departed Oxford for Springfield on February 7, 1980. He was admitted to the hospital at Springfield on February 17, 1980 and discharged on April 14, 1980.

15. Surgery for extensor tendon repair, right index finger, was performed on February 27, 1980 by Dr. William C.

Francis. Although surgery was generally successful, plaintiff has some permanent disability.

16. Plaintiff suffered some physical pain and mental anguish during December, 1979 and January, 1980, due to complications from his medical care at Oxford.

█ Viewed in the light most favorable to plaintiff, the evidence supported the verdict as to each of the three defendants. The failure of defendant Gaunce to obtain plaintiff's medical records and his refusal to assign plaintiff to a less physically demanding placement might be seen as deliberate indifference to plaintiff's serious medical needs. Similarly, the conduct of defendant Steiner in refusing to permit plaintiff to see a physician between December 17, 1979 and January 3, 1980 and during the week that followed satisfies the constitutional standard. Finally, the jury was not unreasonable in finding that defendant Goodman's delay in seeking knowledgable assistance in diagnosing and treating plaintiff's injury from January 10, 1980 until January 31, 1980 reflected deliberate indifference to plaintiff's serious medical problem.

The motion for judgment notwithstanding the verdict is denied.

## II. *Defendant's Motion For a New Trial*

Defendants claim that they are entitled to a new trial, advancing three separate grounds.

### A. *Hearsay*

█ Defendants assert that the Court erred in permitting plaintiff to testify about what he told others regarding his unsuccessful attempts to get medical assistance. Furthermore, defendants assert that the Court should not have permitted plaintiff's witnesses to testify about what plaintiff told them about his efforts to gain medical attention.

**3.** The statements may also be admissible under Rule 801(d)(1)(B), Federal Rules of Evidence. That rule permits out-of-court statements to be admitted where consistent with the declarant's testimony and offered to rebut an express or implied charge of recent fabrication. The challenged statements may be seen as supporting

The Court discerns no error. The statements were properly admitted because they did not constitute hearsay. The statements were not admitted to prove the truth of the matter asserted, but only to prove that the statements were, in fact, made. Therefore, under Rule 801(c), Federal Rules of Evidence, the statements were not hearsay. The jury was repeatedly advised about the limited purpose for which these statements could be considered. *See,* for example, Tr. testimony of Robert Zalewski, 16, 23. Defendants did not object on the grounds of relevance or prejudice, *see* Rules 402, 403, Federal Rules of Evidence, until oral arguments on these motions. Needless to say, such a belated objection is untimely and cannot be considered.[3]

The motion for a new trial on this basis is denied.

### B. *Excessive Damages*

█ Defendants urge that the Court grant a new trial on damages, or in the alternative, reduce the damages awarded in the constitutional case to $4,500 in compensatory damages. Defendants assert that the Court erred in submitting a question on punitive damages to the jury.

Defendants in the constitutional case argue that their conduct was not so malicious or aggravating to justify an award of $10,-500 in punitive damages. After an examination of the evidence in this case, the Court concludes that punitive damages should not have been awarded.

Only days ago, the Court of Appeals wrote: "Punitive damages may be awarded in a civil rights action under Section 1983 either upon a showing of 'aggravating circumstances' or the defendant's 'malicious intent' to deprive the plaintiff of his constitutional rights or to injure him. (cite omit-

plaintiff's claim that he sought medical care but was refused on numerous occasions, a claim that defendants attempted to discredit. For further discussion of this issue, *see Huebschen v. Dep't of Health and Social Services,* 547 F.Supp. at 1181–1182.

ted)" *Freeman v. Frazen,* 695 F.2d 485 at 490–491 (7th Cir.1982). *See Konczak v. Tyrrell,* 603 F.2d 13, 18 (7th Cir.1979) (where evidence viewed in light most favorable to plaintiffs fails to show aggravating circumstances or defendants' malicious intent, punitive damage award correctly set aside).[4]

The Court finds no evidence by which it may conclude that defendants acted with malicious intent or that defendants in some way aggravated the violations of plaintiff's rights under the Eighth Amendment. "[T]he standard for awarding punitive damages is properly higher than the standard governing" liability for deliberate indifference to serious medical needs. *Layne v. Vinzant,* 657 F.2d 468, 481 (1st Cir.1981). Therefore, while it was not unreasonable in concluding that defendants should be liable for an Eighth Amendment violation, the jury had no evidence from which it could properly assess defendants with punitive damages. Therefore, the total damage award in the constitutional case will be lowered to $4,500 in compensatory damages.[5]

■ Defendant United States also argues that the $15,000 compensatory damage award in the tort claim action is excessive and that the Court made no specific findings to support the damages awarded. The Court agrees that $15,000 is excessive and amends its findings in the tort claim action to comport with the compensatory damages assessed by the jury in the constitutional claim. On the basis of the evidence, espe-

cially the findings that plaintiff suffered pain, mental anguish, and partial disability as a result of the actions of the individual defendants, the jury's finding of $4,500 in compensatory damages in the constitutional case is adopted by the Court in the tort claims action as fair and adequate compensation for plaintiff's injuries.

Therefore, the judgment in the tort claim action and in the constitutional case shall be amended to reflect the lowered awards.[6]

### C. *Good Faith*

■ Defendants assert that the Court erred in failing to submit a good faith immunity question to the jury although instructing the jury about the requirements of the good faith defense. The Court told the jury:

> In order to find the defendants liable for deliberate indifference to plaintiff's serious medical needs, you must find the defendants to have acted with a conscious purpose to inflict suffering or a callous or wanton indifference to the serious medical needs of plaintiff.[7]
>
> \* \* \* \* \* \*
>
> A government employee or official performing discretionary functions acts in good faith unless his or her conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.[8]
>
> The defendants have the burden of establishing that they acted in good faith by a preponderance of the evidence.

---

4. Punitive damages are available to a plaintiff in a *Bivens* suit to the same extent as a suit under 42 U.S.C. § 1983. *Carlson v. Green,* 446 U.S. 14, 21–22, 100 S.Ct. 1468, 1472–73, 64 L.Ed.2d 15 (1980); *Paton v. La Prade,* 524 F.2d 862, 871–872 (3d Cir.1975).

5. Defendants also attack the punitive damages instruction. In light of the Court's holding that there was no evidence upon which the jury could assess punitive damages, an analysis of the instruction is unnecessary. The issue simply should not have been submitted to the jury at all.

   While the punitive damage award might have more properly been considered in a motion for judgment notwithstanding the verdict, the Court finds that plaintiff has suffered no preju-

dice by the Court's consideration of the issue as a part of the motion for new trial.

6. As before, the judgment in both cases will be satisfied by a single payment of $4,500.

7. The Court concluded that the jury correctly found a "callous or wanton indifference to the serious medical needs of plaintiff." If the jury had any evidence from which it could find "a conscious purpose to inflict suffering," an award of punitive damages may also have been appropriate. *See* II B.

8. *See Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

If you find that defendants were acting in good faith, then you must find that defendants were not deliberately indifferent to plaintiff's serious medical needs.

During the events at issue, the *Estelle* "deliberate indifference" standard was clearly established. The Court therefore finds defendants' objection anomalous: can defendants act with a callous or wanton indifference to plaintiff's serious medical needs, a clearly established standard, yet still act in "good faith?" Evidence sufficient to establish liability under *Estelle, a fortiori,* dispels any suggestion of good faith as defined in the instruction. Conversely, if plaintiff had failed to show callous or wanton indifference, a good faith question would be entirely superfluous. *Accord: Fielder v. Bosshard,* 590 F.2d 105, 109–110 (5th Cir.1979).

The motion for new trial on this basis is denied.

III. *Defendants' Motion to Amend Judgment to Deny Attorneys Fees to Plaintiff* [9]

Defendants argue that plaintiff is not entitled to reasonable attorneys fees as awarded in the judgment. After a review of the statutes and case law, the Court concurs with defendants and grants the motion.

■ In the United States, the prevailing litigant is not ordinarily entitled to collect his attorney's fees from the losing party. Instead, in conformity with the "American Rule," each litigant must bear the expense of his own attorney. Only where Congress has, by statute, altered the American Rule, may the Court award attorneys fees to prevailing litigants. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 260 n. 33, 95 S.Ct. 1612, 1616, 1623 n. 23, 44 L.Ed.2d 141 (1975).[10]

■ One such fee-shifting statute is the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, which states in part:

In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1983, one basis for an award of attorney's fees under 42 U.S.C. § 1988, established an action for the deprivation of civil rights under state law. This section states in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in ... [a] proper proceeding for redress.

Plaintiff may not collect attorney's fees under 42 U.S.C. § 1988. Sections 1988 and 1983 permit a prevailing plaintiff to collect attorney's fees where his constitutional rights have been violated under color of state law. In this case, defendants are federal officials, acting under color of federal law. Plaintiff sued directly under the Eighth Amendment, pursuant to principles in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). 42 U.S.C. § 1988 simply does not apply where, as here, plaintiff sues federal officials or employees for violation of constitutional rights. *Bush v. Bays,* 463

---

**9.** This motion refers only to attorney's fees awarded in the constitutional case. Plaintiff does not suggest that attorney's fees are available under the Federal Tort Claims Act.

**10.** Other, less common exceptions to the American Rule include the equitable power to permit a party preserving or recovering a fund for the benefit of others in addition to himself to recover attorney's fees from the fund (common fund doctrine), *Boeing Co. v. Van Gemert,* 444 U.S.

472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), attorney's fees assessed as a sanction, *F.D. Rich Co. v. United States ex rel. Industrial Labor Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974), or attorney's fees awarded pursuant to contractual provision, *Equitable Lumber Corp. v. IPA Land Development Corp.,* 38 N.Y.2d 516, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976).

F.Supp. 59, 63 (E.D.Va.1978). *See generally Smith v. Puett,* 506 F.Supp. 134, 145–146 (M.D.Tenn.1980).

Plaintiff, however, directs the Court to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b), which states:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. *The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.* (emphasis added)

■ Plaintiff then cites *Lauritzen v. Secretary of the Navy,* 546 F.Supp. 1221 (C.D.Cal.1982). Judge Tashima, in *Lauritzen,* read the EAJA in tandem with 42 U.S.C. § 1988:

> Thus, § 1988 authorizes fee awards in actions against state officials involving deprivation of constitutional rights under color of state law. The claim brought by plaintiff in the present case is virtually identical to an action under § 1983, the only difference being that this action involves a *federal* official acting under color of *federal* law. Section 2412(b) provides that the United States should be liable "to the same extent that any other party would be liable" under a specific fee-shifting statute. Since a state official would be liable for fees under § 1988 in a § 1983 action alleging constitutional violations of the type asserted here, the United States should be held liable, pursuant to § 2412(b), for attorney's fees

equivalent to those available under § 1988.[11]

546 F.Supp. at 1227 (emphasis in original).

■ This Court respectfully disagrees and adopts Judge Shadur's reasoning in *United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. 122 (N.D.Ill.1982). Judge Shadur rejected the notion that the EAJA was intended to place federal officials acting under color of federal law within the ambit of 42 U.S.C. § 1988:

> In sum, then, Section 1988 lists no section whose provisions [plaintiff's] action was brought to enforce. Section 1988 has not itself been amended to award fees for *Bivens*-type actions, and it therefore cannot serve as the predicate for such an award here. If Congress really intended a different result by passing the Equal Access to Justice Act, it has not chosen the requisite clear directive to the courts for that purpose.

*Id.* at 129.

■ This Court follows the language of the statute as Congress drafted it: where any party other than the United States is liable for attorney's fees under a fee-shifting statute, the federal government's immunity will be abrogated. Consequently, for this plaintiff, as prevailing party, to recover his attorney's fees from the United States, it must be demonstrated that any party would be liable for the payment of those fees. This cannot be shown.

42 U.S.C. § 1988 provides for the assessment of attorney's fees against parties acting under color of state law. Defendant federal officials did not act under color of state law. Therefore, § 1988 is inapplicable. A literal reading of § 2412(b) neither makes it applicable nor provides for the relief which plaintiff requests.

■ Where the statutory language and its implications are clear, the Court will not delve into the legislative history. *See Miscellaneous Pornographic Magazines,* 541

---

**11.** Judge Tashima wrote that the United States *should* be held liable for attorney's fees in a *Bivens* claim, where the claim is similar to a claim under § 1983. Where the language of the statute is clear, as here, this Court declines to comment upon what Congress should have done, but did not.

F.Supp. at 129 ("Arguable congressional intent must give way to unambiguous congressional language."). *But cf. Lauritzen,* 546 F.Supp. at 1227–1228 (legislative history of § 2412(b) found to support award of attorney's fees in *Bivens* -type action).

## ORDER

IT IS ORDERED that the motion of defendants Goodman, Steiner and Gaunce for judgment notwithstanding the verdict is DENIED.

IT IS FURTHER ORDERED that the motions of defendants Goodman, Steiner, Gaunce, and the United States for a new trial are DENIED.

IT IS FURTHER ORDERED that the judgment against defendants Goodman, Steiner, and Gaunce is AMENDED to vacate all awards of punitive damages.

IT IS FURTHER ORDERED that the judgment in favor of plaintiff and against the United States is AMENDED from $15,-000, plus costs, to $4,500, plus costs. As with the original judgment, a single payment of $4,500 will satisfy the judgments against all defendants in both cases.

IT IS FURTHER ORDERED that the motion of defendants Goodman, Steiner and Gaunce to amend the judgment to deny attorney's fees to plaintiff is GRANTED.