Carolyn R. LAURITZEN, Plaintiff,

v.

SECRETARY OF THE NAVY, Defendant.

No. CV 81–879 AWT.

United States District Court, C. D. California.

Sept. 9, 1982.

---

4. Mr. Elbaawna passed away prior to this trial.

Sixth and Ninth Amendments to the United States Constitution.

A temporary restraining order was issued by the Court enjoining plaintiff's discharge from the Navy pending a hearing on her request for a preliminary injunction. Before that hearing was held, Lauritzen amended her complaint, purporting to join as additional plaintiffs the Lesbian and Gay Community Center of San Diego and the Military Law Task Force of the National Lawyers Guild of San Diego. No motion was made, however, to join these parties pursuant to Rule 21, Fed.R.Civ.P. Plaintiff's request for a preliminary injunction was granted; however, plaintiff was ordered, pending a trial on the merits, to seek review of the order that she be discharged from the Board for the Correction of Naval Records ("BCNR"). The BCNR, on application of plaintiff, ordered that Lauritzen's file be purged of material pertaining to her intended discharge, and that her rank and pay appropriate thereto be retroactively restored. Since plaintiff Lauritzen had received from the BCNR substantially all of the relief she sought in this action, the Court, pursuant to an order to show cause and cross-motions by the parties, dismissed this case as moot as to her. The other putative plaintiffs were dismissed for lack of standing under Article III of the U. S. Constitution.

This matter is now before the Court on plaintiff's application for attorney's fees, made pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and § 204(a) of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons set forth below, the Court concludes that plaintiff cannot recover fees directly under 42 U.S.C. § 1988, but that she is entitled to an award pursuant to § 204(a) of the EAJA, 28 U.S.C. § 2412.

Susan McGreivy, Fred Okrand, ACLU Foundation of Southern California, William G. Smith, Los Angeles, Cal., for plaintiff.

Stephen S. Trott, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Herbert W. Booker, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

TASHIMA, District Judge.

Plaintiff Carolyn R. Lauritzen alleged in this action that she was threatened with discharge from the Navy and that her rank and pay had been reduced as a result of her statements to a Navy psychiatrist that she might have homosexual tendencies. Plaintiff sought damages and injunctive and declaratory relief, on the ground that the Navy's past and threatened actions violated her rights under the First, Fourth, Fifth,

### I. *Civil Rights Attorney's Fees Award Act of 1976*

The Civil Rights Attorney's Fees Award Act of 1976 amended 42 U.S.C. § 1988 so as to provide in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.[1]

 Plaintiff did not bring this action to enforce any of the specific provisions (*i.e.,* § 1981, etc.) enumerated in § 1988. Instead, she claimed a right to relief directly under the United States Constitution and under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (recognizing private damage action for Fourth Amendment violations by federal officers). *See also Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (Fifth Amendment). Accordingly, plaintiff cannot obtain attorney's fees directly under 42 U.S.C. § 1988.

## II. *Equal Access to Justice Act*

 Plaintiff also seeks to recover fees under the EAJA. This motion presents previously undecided questions regarding the applicability of this recent legislation[2] to actions brought against federal officers for violations of the federal Constitution.

The EAJA substantially broadens the liability of the United States for attorney's fees in civil actions and adversarial administrative adjudications. As stated in the Report of the House Committee on the Judiciary, H.R.Rep.No.1418, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad. News 4984 (hereinafter "House Report"), the general purposes underlying the enactment of the EAJA were as follows:

The bill rests on the premise that certain individuals, partnerships, corporations and labor and other organizations may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the Unit-

---

1. 42 U.S.C. § 1988 was subsequently further amended, effective October 1, 1981; pursuant to §§ 205(c) & 208 of the EAJA, Pub.L.No.96–481, 94 Stat. 2330 (1980). That amendment, which strikes the language in § 1988 authorizing fee awards in actions to enforce provisions of the Internal Revenue Code, is not relevant here.

2. The EAJA became effective on October 1, 1981, Pub.L.No.96–481 § 208, 94 Stat. 2330 (1980). Section 208 of the EAJA, Pub.L.No.96–481, 94 Stat. 2330, states that the Act applies only to "any civil action or adversary adjudication ... which is pending on, or commenced on or after" October 1, 1981. On the basis of this language, the government contends that if the EAJA applies to this case, its application should be limited to that portion of the total fees which reflect services rendered after the October 1, 1981 effective date. The government's interpretation is inconsistent both with common sense and with the broad policies of the Act. *See Photo Data, Inc. v. Sawyer,* 533

F.Supp. 348, 351 (D.D.C.1982) ("construing the [EAJA] to bifurcate cases on October 1, 1981 would eschew the purpose of the Act to provide financial assistance to those litigants who would not ordinarily be able to contest unreasonable government action, as it would diminish their recovery and thereby remove the incentive to sue."); *Berman v. Schweiker,* 531 F.Supp. 1149, 1151 (N.D.Ill.1982) (allowing fee award for entire action where right to appeal had not expired on October 1, 1981). The government's interpretation is also inconsistent with the construction given similar attorney's ·fees statutes. *See, e.g., Bradley v. School Bd.,* 416 U.S. 696, 721, 94 S.Ct. 2006, 2021, 40 L.Ed.2d 476 (1974) (20 U.S.C. § 1617); *Hutto v. Finney,* 437 U.S. 678, 694–95 n.23, 98 S.Ct. 2565, 2575 n.23, 57 L.Ed.2d 522 (1978) (42 U.S.C. § 1988). Accordingly, the Court holds that the EAJA applies to the present action in its entirety, including fees for services rendered before October 1, 1981.

ed States, unless the Government action was substantially justified. Additionally, the bill ensures that the United States will be subject to the common law and statutory exceptions to the American rule regarding attorney fees. This change will allow a court in its discretion to award fees against the United States to the same extent it may presently award such fees against other parties.

*Id.* at 5–6, 1980 U.S.Code Cong. & Ad.News at 4984.

Plaintiff seeks fees under the EAJA pursuant to two separate subsections of 28 U.S.C. § 2412:

(1) § 2412(b), which gives the court discretion to award fees to a prevailing party, and provides that the United States "shall be liable . . . to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award"; and

(2) § 2412(d)(1)(A), which requires that fees be awarded to a party prevailing in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." [3]

In order to evaluate plaintiff's request for fees under these provisions, it is necessary to determine: (a) whether plaintiff was a "prevailing party"; (b) whether the position of the United States was "substantially justified" and, if not, whether special circumstances nevertheless make an award unjust (under § 2412(d)(1)(A)); and (c) whether any party other than the United States would be liable for fees under the common law or pursuant to specific statutory authority (under § 2412(b)).

### A. Meaning of "Prevailing Party"

The EAJA provides no definition of the term "prevailing party" as used in § 2412. However, applicable legislative history makes clear that Congress intended "that the interpretation of the term in [the EAJA] be consistent with the law that has developed under existing statutes." House Report at 11, 1980 U.S.Code Cong. & Ad. News at 4990. Consistent with the legislative history, this Circuit has recently held that for the purpose of defining the term "prevailing party" the EAJA and 42 U.S.C. § 1988 are indistinguishable. *NLRB v. Doral Bldg. Services, Inc.,* 680 F.2d 647 (9th Cir. 1982).

The case law in this Circuit construing the term "prevailing party" under § 1988 was recently summarized in *Pomerantz v. County of Los Angeles,* 674 F.2d 1288, 1293 n.2 (9th Cir. 1982):

The trial court, in reconsidering the attorney's fees issue, may wish to note the following: The court in *American Constitutional Party v. Munro,* 650 F.2d 184 (9th Cir. 1981), held that in order for there to be a "prevailing party," there must be a causal relationship between the litigation brought and the practical outcome realized. The former must be a material factor in bringing about the latter. *Id.* at 187. In addition, although the plaintiff need not win formal relief, the suit must cause a significant or important change in order for the plaintiff to be a "prevailing party." S.Rep.No.1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5912 (fees especially appropriate where party prevails on an important matter in the litigation); *Manhart v. City of Los Angeles Department of Water & Power,* 652 F.2d 904,

---

**3.** Plaintiff also bases her application on § 2412(d)(3), which requires that fee awards in actions for review of adversary agency adjudications include fees and expenses relating to representation before the agency, "unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circum-

stances make an award unjust." It is doubtful that this is an "action for review of adversary agency adjudication." However, it is unnecessary to decide this issue, since the finding of "substantial justification," Part II.B, *post,* would apply to § 2412(d)(3), as well as to § 2412(d)(1)(A).

906–07 (9th Cir. 1981) (plaintiff *must* prevail on a significant issue).

■ Applying these standards to the present case, it is apparent that plaintiff Lauritzen was the "prevailing party" in this action. Plaintiff's case on the merits was found strong enough by the Court to support the issuance of a preliminary injunction restraining her discharge. That relief, in turn, enabled her to seek administrative relief from the BCNR prior to her discharge[4] and to retain her position with the Navy pending resolution of this matter. Furthermore, it is clear from the administrative record that the BCNR considered and gave appropriate weight to this Court's findings and conclusions in support of the preliminary injunction in reaching its decision to grant plaintiff the relief she sought. Since the judicial relief obtained by plaintiff was a material factor in bringing about the practical outcome realized in this case, plaintiff should be considered a prevailing party for purposes of 28 U.S.C. § 2412. *See Williams v. Alioto,* 625 F.2d 845, 847–48 (9th Cir. 1980) (plaintiff who obtained preliminary injunction was "prevailing party" under 42 U.S.C. § 1988, even though action was subsequently dismissed as moot), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981). *See also Besig v. Dolphin Boating and Swimming Club,* 683 F.2d 1271 at 1278 (9th Cir. 1982).

### B. *Substantial Justification*

■ Section 2412(d)(1)(A) provides for recovery of fees in civil actions, except where

the position of the United States was "substantially justified" or "special circumstances make an award unjust."[5] As noted in the House Report:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government.

> \* \* \* \* \* \*

> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

House Report at 10–11, 1980 U.S.Code Cong. & Ad.News at 4989–90.

I find that the government's position in this action[6] was reasonable and substantially justified. Plaintiff's complaint presented relatively novel issues as to which the government could appropriately insist upon a judicial resolution.[7] Further, the government correctly pressed for exhaustion of the administrative remedies provided by the BCNR. Therefore, plaintiff is not entitled to recover under § 2412(d)(1)(A).

---

**4.** The government conceded at the hearing on the preliminary injunction that although this remedy was theoretically available to plaintiff prior to her discharge, because of the backlog of cases, the BCNR would be unable to process plaintiff's claim prior to her threatened discharge date.

**5.** That section provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds

> that the position of the United States was substantially justified or that special circumstances make an award unjust.

**6.** *See Alspach v. District Director of Internal Revenue,* 527 F.Supp. 225, 228 (D.Md.1981) (holding proper focus under § 2412 is on government's position in the litigation, not on underlying actions complained of).

**7.** At the time the preliminary injunction was issued, this Circuit had recently held that homosexual *conduct* was a legitimate ground for discharge from the Navy. *Beller v. Middendorf,* 632 F.2d 788 (9th Cir. 1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981).
In this case, plaintiff claimed that she was threatened with being discharged for having

## C. Liability Under Statute

■ Section 2412(b) provides that in civil actions against the United States or against federal officials, the government "shall be liable ... [for attorney's fees] to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." [8] Under common law, attorney's fees are generally not available to prevailing parties, except under special circumstances not present in this case.[9] There appears to be a statute, however, which specifically provides for fee awards of the type sought in this action.

As noted previously, 42 U.S.C. § 1988 provides for recovery of attorney's fees in actions to enforce the provisions of certain enumerated sections. One of the sections specified in § 1988 is 42 U.S.C. § 1983, which provides in relevant part that:

> Every person who, under color of ... any State [law] ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ Thus, § 1988 authorizes fee awards in actions against state officials involving deprivation of constitutional rights under color of state law. The claim brought by plaintiff in the present case is virtually identical to an action under § 1983, the only difference being that this action involves a *federal* official acting under color of *federal* law. Section 2412(b) provides that the United States should be liable "to the same extent that any other party would be liable" under a specific fee-shifting statute. Since a state official would be liable for fees under § 1988 in a § 1983 action alleging constitutional violations of the type asserted here, the United States should be held liable, pursuant to § 2412(b), for attorney's fees equivalent to those available under § 1988.

Considerable support for such an interpretation of § 2412(b) is provided by relevant legislative history. First, it is clear that the drafters of the bill were well aware of the potential applicability of § 2412(b) to 42 U.S.C. § 1988. For example, the House Report (by far the most extensive discussion of the bill in the legislative history), in analyzing § 2412(b), states: "This subsection clarifies the liability of the United States under such statutes as the Civil Rights Attorney's Fees Awards Act of 1976 [42 U.S.C. § 1988]. . . ." House Report at 17, 1980 U.S.Code Cong. & Ad. News at 4996.

■ Second, and more importantly, it appears that the bill which eventually became the EAJA was specifically amended to pro-

---

admitted having homosexual *tendencies* (*i.e.,* for her state of mind). The preliminary injunction was issued on the finding that this claim raised a serious question to be litigated, *i.e.,* whether the Navy could constitutionally discharge an enlisted person for her belief or state of mind, as opposed to an act or conduct. *See benShalom v. Secretary of Army,* 489 F.Supp. 964, 974 (E.D.Wis.1980). *See also, Miller v. Rumsfeld,* 647 F.2d 80 (9th Cir. 1981) (mem.) (Norris, J., dissenting from rejection of suggestion for rehearing en banc of *Beller, supra* ). There is no controlling case law on this issue.

**8.** That section provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil

action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

**9.** Plaintiff asserts that the liability of the United States can be established under the "bad faith" exception to the general common law rule barring fee awards. The Court finds, however, that the government's actions in this case do not demonstrate bad faith, for the same reasons discussed in Part II.B, *ante.*

vide for precisely the type of liability involved in this case. Senate Bill 265, as it read prior to the hearings before the House Subcommittee on Courts, Civil Liberties and the Administration of Justice, provided in § 2412(b) that the United States shall be liable to the same extent as "a private party" would be liable. *Award of Attorneys' Fees Against the Federal Government: Hearings on S.265 Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee,* 96th Cong., 2d Sess. at 3, 9 (1980) (hereinafter "Hearings on S.265"). After hearing testimony on S.265, the subcommittee amended the proposed language of § 2412(b) so as to make the United States liable to the same extent as "any other party," rather than "a private party," would be liable. S.265, 96th Cong., 2d Sess. § 4(a) (Sept. 26, 1980 Committee Print Showing S.265 as reported by the Subcommittee on Courts, Civil Liberties, and The Administration of Justice, at 19–20). *See also* House Report at 1, 4, 7. The subcommittee was apparently persuaded to make this amendment by the testimony of Mr. Armand Derfner, testifying on behalf of the Lawyers Committee for Civil Rights Under Law and the American Civil Liberties Union, which included the following:

> Mr. Kastenmeier, if I could just direct myself to one portion of this bill?
>
> There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.
>
> In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State [10] or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal stat-

utory right, that fees would be available under the *Newman v. Peggy* [Piggie] [sic] *Park* standard. These bills say that the United States should pay fees—in the amendment to 28 United States Code 2412—in those circumstances where the court may award such fees in suits involving private parties.

> That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.

Hearings on S.265 at 100.

The bill was amended so as to read "any other party" in the draft immediately following this testimony, thereby strongly suggesting an intent to make the United States liable for attorney's fees in actions against federal officials for vindication of constitutional rights analogous to those which can be brought against state officials under 42 U.S.C. § 1983.

Finally, such an interpretation comports with the policies underlying enactment of the EAJA. As stated in the House Report, the EAJA was intended to ensure that individuals and small businesses would not "be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing vindication of their rights." House Report at 5, 1980 U.S.Code Cong. & Ad.News at 4984. The Act reflects an intention to place the federal government and civil litigants on a "completely equal footing." *See* House Report at 9, 1980 U.S. Code Cong. & Ad.News at 4987.

To achieve these goals, Congress provided that the United States should be liable for attorney's fees "to the same extent that

---

**10.** Although an action under § 1983 may not be brought directly against a state, an action can be brought against a state officer in his official capacity under that section, and in such cir-

cumstances, attorney's fees may, in appropriate circumstances, be recovered from the state under § 1988. *See Hutto v. Finney, supra,* 437 U.S. at 693–700, 98 S.Ct. at 2574–78.

any other party would be liable under the common law or under the terms of any statute ...." § 2412(b). By way of this broad language, Congress sought to incorporate a substantial field of statutory and common law authority. Under such circumstances, it could not reasonably be expected that all actions against the United States would fit precisely within the terms of pre-existing statutes. Instead, the language of § 2412(b) and the policies it was intended to effectuate require that the court consider in each case whether the action before it is fundamentally analogous to an action in which some other party, either public or private, would be liable under existing fee-shifting statutes. In the present case, this test has clearly been met. Accordingly, the Court concludes that defendant is liable under § 2412(b) for attorney's fees to the same extent that any other party would be liable for such fees under 42 U.S.C. § 1988.[11]

■■■ Although fee awards under § 1988 are discretionary, it is generally held that prevailing parties within the coverage of that section should ordinarily recover attorney's fees unless special circumstances would render such an award unjust. *Teitelbaum v. Sorenson,* 648 F.2d 1248, 1249 (9th Cir. 1981); *Collins v. Chandler Unified School Dist.,* 644 F.2d 759, 763 (9th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981); *Sethy v. Alameda County Water Dist.,* 602 F.2d 894, 897 (9th Cir. 1979) (per curiam) (citing legislative history of § 1988), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). The government has cited no circumstance which would render an award unjust in the present case. Further, the Court concludes that it is proper to include in the award fees

arising from proceedings before the BCNR, since plaintiff sought relief from the BCNR pursuant to order of the Court during the pendency of this action. *Cf. New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 71 (1980) (allowing recovery of attorneys fees relating to state administrative proceedings in Title VII action); *Bartholomew v. Watson,* 665 F.2d 910, 912–13 (9th Cir. 1982) (upholding fee award under § 1988 for services performed in state court during pendency of federal action stayed under *Pullman* [12] abstention doctrine); *Thornberry v. Delta Air Lines, Inc.,* 676 F.2d 1240, 1244 (9th Cir. 1982) (upholding fee award for attorney's time in administrative proceedings which were "relevant and beneficial in preparing [a] Title VII claim").

For the foregoing reasons, plaintiff Lauritzen's application for attorney's fees will be granted.

---

11. *United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. 122 (N.D.Ill.1982), was published after this memorandum opinion was prepared. Although it can be treated as dicta and distinguished from this case on a number of grounds (*e.g.,* the essentially tortious nature of that action, 541 F.Supp. at 128 & n.5, and the complete dissimilarity between the defense of a forfeiture action and an action under 42 U.S.C. § 1983, 541 F.Supp. at 129 n.7), it, nevertheless, reaches the opposite conclusion on the § 2412(b) statutory construction issue. 541

F.Supp. at 128–29. I adhere to the views stated herein and respectfully disagree with Judge Shadur's conclusion. (He does acknowledge that there is no explanation for the change in language—from "a private party" to "any other party"—other than the reasons advanced in Derfner's testimony. 541 F.Supp. at 129 n.6).

12. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).