NORTHWEST INDIAN CEMETERY PROTECTIVE ASSOCIATION, a non-profit corporation; Jimmie James; Sam Jones; Lowana Brantner; Christopher H. Peters; Sierra Club, a non-profit corporation; The Wilderness Society, a non-profit corporation; California Trout, a non-profit corporation; Siskiyou Mountains Resource Council, an unincorporated association; Redwood Region Audubon Society, an unincorporated association; Northcoast Environmental Center, a non-profit corporation; Timothy McKay; and John Amodio; Plaintiffs,

v.

R. Max PETERSON, in his official capacity as Chief, United States Forest Service; John R. Block, in his official capacity as Secretary of the Department of Agriculture; United States Forest Service; and United States of America; Defendants.

STATE OF CALIFORNIA, Acting By and Through The NATIVE AMERICAN HERITAGE COMMISSION, Plaintiff,

v.

John R. BLOCK, in his official capacity as Secretary of the United States Department of Agriculture; R. Max Peterson, in his official capacity as Chief of the Forest Service of the United States Department of Agriculture; Zane G. Smith, Jr., in his official capacity as Regional Forester of the California Region of the Forest Service of the United States Department of Agriculture, Defendants.

Nos. C–82–4049, C–82–5943 SAW.

United States District Court,
N.D. California.

Nov. 15, 1983.

Julie E. McDonald, Michael R. Sherwood, Sierra Club Legal Defense Fund, San Francisco, Cal., Marilyn B. Miles, Michael S. Pfeffer, David J. Rapport, California Indian Legal Services, Eureka, Cal., Edna Walz, Deputy Atty. Gen., State of Cal., Sacramento, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., Rodney H. Hamblin, Asst. U.S. Atty., Lands Div., San Francisco, Cal., for defendants.

### ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES

WEIGEL, District Judge.

On May 24, 1983, this Court, 565 F.Supp. 586, entered an order permanently enjoining the United States Forest Service from completing construction of a paved road from Gasquet, California to Orleans, California, and from engaging in commercial timber harvesting or constructing logging roads in certain portions of the Six Rivers National Forest until specified conditions are met. The plaintiffs who sought and obtained the injunction now move for attorney fees.[1]

---

**1.** Plaintiffs fall into two categories. The nine "conservation plaintiffs" are seven nonprofit corporations and two Sierra Club members. The "Indian plaintiffs" are four individuals of American Indian heritage. The plaintiffs jointly contended that Forest Service decisions to complete the Gasquet-Orleans (G–O) Road and to adopt a forest management plan providing for timber harvesting in the Blue Creek Unit of Six Rivers National Forest violated (1) the first amendment; (2) the American Indian Religious

Freedom Act of 1978, 42 U.S.C. § 1996; (3) the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.;* (4) the Wilderness Act, 16 U.S.C. §§ 1131 *et seq.;* (5) the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. §§ 1251 *et seq.;* (6) federal trust responsibility to safeguard water and fishing rights reserved to American Indians in the Hoopa Valley Indian Reservation; (7) the Administrative Procedure Act, 5. U.S.C. § 706; (8) the

### I. Plaintiffs' Entitlement to Attorney Fee Awards

Plaintiffs maintain that attorney fee awards in their favor are proper pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b) and (d), the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, and the Federal Water Pollution Control Act (FWPCA), 33 U.S.C. § 1365(d).

#### A. Section 2412(d)

Under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), a court is required to award a prevailing private party meeting specified financial criteria attorney fees and expenses in a non-tort action brought by or against the United States, unless the position of the United States was "substantially justified" or special circumstances make an award unjust. The parties agree that the action did not sound in tort and that all plaintiffs prevailed. Plaintiffs' fee petitions were timely filed, and this Court has jurisdiction to make an award. See 28 U.S.C. § 2412(d)(1)(B). The defendants, however, contend that their position as to each of plaintiffs' claims was "substantially justified," so that a section 2412(d) fee award is inappropriate. See Hoang Ha v. Schweiker, 707 F.2d 1104, 1106 (9th Cir.1983).

■ Government need not win its case to show that its position was substantially justified. Id. The test of substantial justification is whether the Government's case had a reasonable basis in fact and law. Id.; see H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4989; H.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 22 (1980); Foster v. Tourtellotte, 704 F.2d 1109, 1112 (9th Cir.1983).

■ With regard to all points at issue in this case, defendants' position was reasonable. No judicial decision or other authority inevitably signalled the outcome on any claim. Where pertinent law is sparse or ambiguous, the Government is justified in pressing its position to a judicial resolution. See Foster, 704 F.2d at 1112.

That the Government's position was reasonable, if not correct, is further shown by this Court's denial of plaintiffs' motion for a preliminary injunction. See supra note 1. At trial, the defendants introduced substantial and persuasive expert testimony to support their factual contentions. Only an even more persuasive showing by plaintiffs tipped the preponderance of evidence in their favor. In its proposal for development, the Forest Service was sensitive to constitutional concerns stemming from the Establishment Clause of the first amendment and the Equal Protection Clause of the fourteenth amendment. While this Court concluded that the Free Exercise Clause concerns outweigh those cited by the Forest Service, the Government's position on the question was substantially justified. In opposing plaintiffs' environmental claims, the defendants reasonably relied on their prior experience with construction of the G–O Road. This experience did not indicate the type and magnitude of the environmental concerns that would be caused by construction of the proposed addition.

In sum, defendants offered a coherent and reasonable response to each claim on which plaintiffs prevailed. Consequently, the petitions for awards pursuant to section 2412(d) are denied.

#### B. Section 2412(b)

Under section 2412(b) of the EAJA, a court is empowered to award the prevailing

---

Multiple Use, Sustained Yield Act, 16 U.S.C. §§ 528–531; and (9) the National Forest Management Act of 1976, 16 U.S.C. §§ 1600 et seq.

On December 17, 1982, the Court denied plaintiffs' motion to enjoin preliminarily the Forest Service from soliciting bids on the proposed addition to the G–O Road. The Court so ruled upon defendants' assurance that no construction would begin pending the Court's deci-

sion on the merits. See Northwest Indian Cemetery Protective Ass'n v. Peterson, 552 F.Supp. 951 (N.D.Cal.1982). After a 13 day trial, the Court concluded that the challenged Forest Service decisions violated (1) the first amendment's free exercise guarantee; (2) NEPA and the Wilderness Act; (3) the FWPCA; and (4) the Government's trust responsibility for Hoopa Indian water and fishing rights.

party attorney fees and expenses in an action against the United States in some instances where the position of the Government was substantially justified. The statute provides that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). Plaintiffs contend that the United States is liable via section 2412(b) for attorney fees and expenses pursuant to the "common benefit" doctrine of common law and pursuant to two statutes, 42 U.S.C. § 1988 and 33 U.S.C. § 1365(d).

### 1. *Common Benefit Doctrine*

■ A successful litigant can qualify for an award under the equitable common benefit doctrine if he imparts a substantial nonmonetary benefit to an identifiable class of beneficiaries. *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1122 (9th Cir.1981). The litigant is then entitled to recover attorney fees from the benefited class. *Id.*

■ The Supreme Court has acknowledged the existence of the common benefit doctrine as an exception to the common law American Rule against fee awards, but limited its application to situations where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be "shifted with some exactitude to those benefiting." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 264 n. 39, 95 S.Ct. 1612, 1625 n. 39, 44 L.Ed.2d 141 (1975); *see Southeast Legal Defense Group v. Adams*, 657 F.2d at 1122–23. Here, plaintiffs urge that the United States should pay fees on behalf of the general public because "[t]he general public benefits by having the constitutional rights of minority groups within society protected, and by having its physical environment protected through enforcement of laws enacted for the public's benefit." The Ninth Circuit, applying *Alyeska*, has specifically rejected such application of the common benefit doctrine, reasoning that it is

impossible to determine with exactitude the extent to which "the general public," as distinguished from some selected elements of the public, should bear the litigation costs. *Southeast Legal Defense Group v. Adams*, 657 F.2d at 1123; *see also Stevens v. Municipal Court*, 603 F.2d 111, 113 (9th Cir.1979). The common benefit doctrine therefore does not provide plaintiff with an avenue for recovering fees.

### 2. *42 U.S.C. § 1988*

■ Plaintiffs cite the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, as a fee-shifting statute that supplies specific authority for a section 2412(b) fee award. Section 1988 provides in pertinent part that

[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

The present action was not brought pursuant to any of the named statutes. Thus, as plaintiffs concede, section 1988 does not directly authorize a fee award in their favor. Plaintiffs instead construct an argument based upon the terms of section 2412(b). If a state agency had acted in the same manner as the present federal defendants, the state would have been subject to suit for injunctive relief for redress of an impending first amendment violation pursuant to 42 U.S.C. § 1983, a statute listed in section 1988. Because section 2412 subjects the United States to fees "to the same extent that any other party would be liable," plaintiffs argue that the United States is subject to fees for conduct that, if engaged in by a state, would subject the state to a section 1988 fee award.

Courts have split in their assessment of the interpretation plaintiffs offer. *Compare Premachandra v. Mitts*, 548 F.Supp. 117 (E.D.Mo.1982) and *Lauritzen v. Secretary of the Navy*, 546 F.Supp. 1221 (C.D. Cal.1982) (awarding fees) *with Venus v.*

*Goodman*, 556 F.Supp. 514 (W.D.Wis.1983) and *United States v. Miscellaneous Pornographic Magazines*, 541 F.Supp. 122 (N.D.Ill.1982) (denying fees). Appellate courts have yet to address the issue. This Court must therefore independently assess the meaning of section 2412(b).

In *Lauritzen*, the court placed primary emphasis on an incident in the legislative history of the Equal Access to Justice Act. As originally drafted, the bill made the United States liable for fees to the same extent as a "private party." S.265, 96th Cong., 1st Sess. § 4(a) (1979). A witness testifying before the House subcommittee considering the bill suggested an amendment in the following terms:

There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.

In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the *Newman v. Peggy* [sic] *Park* standard. These bills say that the United States should pay fees—in the amendment to 28 United States Code 2412—in those circumstances where the court may award such fees in suits involving private parties.

That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.

*Award of Attorneys' Fees Against the Federal Government: Hearings Before the Subcomm. on Court, Civil Liberties, and the Administration of Justice of the* *Comm. on the Judiciary*, 96th Cong., 2d Sess. 100 (1980) (testimony of Armand Derfner, on behalf of the Lawyer's Committee for Civil Rights Under Laws). Without further comment or explanation in the record, the bill was subsequently amended to its present form, which states that the United States is liable to the same extent as "any other party."

Judge Tashima observed in *Lauritzen* that this change, following Derfner's testimony, "strongly [suggests] an intent to make the United States liable for attorney's fees in actions against federal officials for vindication of constitutional rights analogous to those which can be brought against state officials under 42 U.S.C. § 1983." 546 F.Supp. at 1228. Judge Tashima concluded that Congress indeed had such an intent, based on Derfner's testimony, the frequent mention of section 1988 in the history of the EAJA, and the perception that the EAJA "reflects an intention to place the federal government and civil litigants on 'a completely equal footing.'" *Id.* at 1227–28.

This reasoning, particularly the analysis of the thrust of Derfner's statement, has force. Yet this Court cannot agree with the conclusion reached in *Lauritzen*. Although the language of the statute could support plaintiffs' construction, it is impossible to reconcile such an interpretation with the overall structure and purpose of the EAJA. Section 1988 fees may be awarded against state officials held liable for depriving any person of federal statutory as well as constitutional rights under color of state law. *See Maine v. Thiboutot*, 448 U.S. 1, 8–10, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980). If the United States is liable for fees whenever federal officials acting "under color of federal law" contravene a federal statutory rule, a very substantial proportion of suits against the United States would fall within section 2412(b). *See United States v. Miscellaneous Pornographic Magazines*, 541 F.Supp. at 125. The legislative history of the EAJA gives no indication that this subsection is intended to apply to such a broad

category of actions. Rather, Congress envisioned that the primary basis for fees under the Act would be section 2412(d), which allows awards only when the nongovernmental party meets financial criteria and the government's position in the litigation is not substantially justified. *See generally* H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980). *Lauritzen* correctly observes that there is little policy reason for denying fees in civil rights actions against federal officials based on constitutional violations while allowing them in identical actions against state officials. But in the absence of some express authorization by Congress for drawing a distinction between statutorily and constitutionally based suits against federal officials, the Court is not free to create such a distinction.

Members of Congress discussing section 2412(b) frequently mentioned that the subsection would allow fee awards against the United States pursuant to the authority of section 1988. *E.g.*, H.R.Rep. No. 1418 at 17, U.S.Code Cong. & Admin.News 1980, p. 4996 ("This subsection clarifies the liability of the United States under such statutes as the Civil Rights Attorney's Fees Awards Act of 1976 ..."). However, these remarks may be explained by the congressional intent to overrule decisions such as *NAACP v. Civiletti*, 609 F.2d 514 (D.C. Cir.), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1979), and *Shannon v. HUD*, 577 F.2d 854 (3d Cir.), *cert. denied*, 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978), which had held that fees could not be awarded against the United States even when expressly authorized by section 1988.[2] *See United States v. Miscellaneous Pornographic Magazines*, 541 F.Supp. at 128 n. 4. The amendment adopted in response to the testimony of witness Derfner can be reconciled with this Court's interpretation as well. Congress did not adopt the precise phrasing suggested by Derfner, which would have allowed fees "in those circumstances where the court may award such fees in suits involving other litigants." Derfner's wording would have favored plaintiffs' argument that fees may be awarded against the United States when the state in analogous factual *circumstances* would be held liable, and this may have been Derfner's intent in offering the amendment. But Congress instead changed the bill to provide that the United States is liable "to the same extent that any other party would be liable." The difference in wording suggests that regardless of Derfner's intent, Congress's intent in amending the bill was limited to ensuring that fees may be awarded against the United States pursuant to common law and specific statutory provisions that allow fee awards against governmental entities as well as those that allow awards against private parties. *See* H.R.Rep. No. 1418 at 17, U.S.Code Cong. & Admin.News 1980, p. 4996 ("[Section 2412(b)] reflects the belief that at a minimum, the United States should be held to the same standard in litigating as other parties and that no justification exists for exempting the United States from fee awards in those limited situations.")

Because this Court concludes that Congress has not authorized an award of attorney fees against the United States of a plaintiff prevailing on a constitutional claim when the Government's position was substantially justified, plaintiffs will not be awarded fees based on their success on their first amendment claim in this case.

### 3. *33 U.S.C. § 1365(d)*

■ Plaintiffs finally cite the citizen suit provision of the FWPCA, 33 U.S.C. § 1365, as a source of statutory authority for a section 2412(b) fee award. Section 1365 states, in pertinent part:

The court, in issuing any final order in any action brought pursuant to this sec-

---

**2.** Section 1988 would have allowed fees in those cases because federal officials were found to have violated 42 U.S.C. §§ 1981 and 1985, statutes listed in section 1988. In a proper case, where federal officials conspire illegally with state officials to violate first amendment rights, the United States possibly could be held liable under section 1983 as well. *See Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir.1983).

tion, may award costs of litigation (including reasonable attorney and witness fees), to any party, whenever the court determines such award is appropriate.

This section has been held to mandate attorney fee awards to the prevailing party in FWPCA citizen suits, absent exceptional circumstances. *Save Our Sound Fisheries Association v. Callaway,* 429 F.Supp. 1136, 1145 (D.R.I.1977). No exceptional circumstances that would warrant denial of a fee exist here. Thus, plaintiffs are entitled to a fee award based on section 1365(d).

Defendants raise several objections to such an award, all of which would require this Court to reverse its earlier conclusion that the Government may be enjoined pursuant to the FWPCA. Primarily, defendants argue that section 1365 did not provide plaintiffs with a proper avenue of relief because plaintiffs did not give formal notice of the alleged violation sixty days prior to commencing suit. This failure does not foreclose plaintiffs from section 1365 relief. All parties required to be notified had actual notice of the environmental controversy involved in plaintiffs' suit well over sixty days prior to the filing of plaintiffs' complaint. Such actual notice has been held sufficient to satisfy the requirement of section 1365(b)(1). *Pymatuning Water Shed Citizens v. Eaton,* 644 F.2d 995, 996–97 (3d Cir.1981); *Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d 231, 243 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981); *see also NRDC v. Callaway,* 524 F.2d 79, 84 n. 4 (2d Cir.1975).

Defendants also contend that relief under section 1365 is inappropriate because any violations of federal effluent standards were prospective only. However, courts have sustained section 1365 actions in similar situations where the harm was threatened but had not yet occurred. *E.g., Susquehanna Valley Alliance v. Three Mile Island,* 619 F.2d at 243.

The Court grants the petitions for awards pursuant to section 2412(b) of the EAJA and section 1365(d) of the FWPCA.

## II. *Amount of the Awards*

[7] In determining a reasonable attorney fee, the most useful method is to multiply the number of hours expended by an hourly rate. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 840 (9th Cir.1982). The hourly rate is governed in the first instance by the attorney's usual billing rate, but can be raised or lowered on the basis of a number of factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *Moore v. Jas. H. Matthews & Co.,* 682 F.2d at 838, 840. A court must also consider whether the plaintiff achieved a level of success on a given claim that makes the level of hours expended a satisfactory basis for making a fee award. *Hensley,* 103 S.Ct. at 1940.

Here, the sole basis for recovery of attorney fees by plaintiff is the FWPCA. This claim was one of eight raised by plaintiffs. Although the FWPCA claim formed a significant part in the preparation and trial of the case, it had no real connection with the issue that consumed a majority of the Court's and counsel's attention throughout these proceedings—the question of Indian plaintiffs' free exercise rights. In this circumstance, the unrelated FWPCA claim must be treated as if it had been raised in a separate lawsuit. *Id.* Such a suit confined to the FWPCA issue would have required far fewer counsel hours. The FWPCA claim was one of five on which plaintiffs prevailed. Consequently, the Court will award fees for one-fifth of the allowable hours worked by all plaintiffs' counsel.[3]

Following are the specific calculations and awards.

### A. *Hours*

The Court accepts the submissions of plaintiffs' counsel regarding the number of

---

**3.** No party argues that hours worked by attorneys for the Indian plaintiffs should be distinguished from hours worked by attorneys for the conservation plaintiffs. The Court will therefore treat all plaintiffs' counsel identically for purposes of the fee calculation.

hours expended in this case. Defendants claim that counsel efforts were duplicative, so that the total number of hours allowed should be decreased. The record indicates that while some duplicative activity may have occurred, plaintiffs' counsel wisely exercised "billing judgment," excluding from their fee requests hours that were redundant or unproductive. *See Hensley*, 103 S.Ct. at 1939–40. In addition, counsel for plaintiffs extensively employed law clerks but elected to forego a possible claim for fees based on this work. The Court will award fees for the following number of hours.

| | |
|---|---|
| Michael R. Sherwood | 1261 hours [4] |
| Julie E. McDonald | 230 hours |
| Marilyn B. Miles | 723 hours |
| George Forman | 175 hours |
| David J. Rapport | 232 hours |

Dividing by five, the adjusted hours to be allowed are:

| | |
|---|---|
| Michael R. Sherwood | 252.2 hours |
| Julie E. McDonald | 46.0 hours |
| Marilyn B. Miles | 144.6 hours |
| George Forman | 35.0 hours |
| David J. Rapport | 46.4 hours |

### B. *Rates*

After careful consideration of each attorney's background, experience, expertise, general skill, the public nature of this case, the public interest orientation of the entities for which they work, and the results obtained, the Court has decided upon the following hourly rates.

| | | |
|---|---|---|
| Michael R. Sherwood | $75 | per hour |
| Julie E. McDonald | $65 | per hour |
| Marilyn B. Miles | $50 | per hour |
| George Forman | $65 | per hour |
| David J. Rapport | $65 | per hour |

### C. *Awards*

The attorney fee awards are:

| | |
|---|---|
| Michael R. Sherwood | $ 18,915.00 |
| Julie E. McDonald | $ 2,990.00 |
| Marilyn B. Miles | $ 7,230.00 |
| George Forman | $ 2,275.00 |
| David J. Rapport | $ 3,016.00 |

The expert fee awards, based on representations of plaintiffs' counsel and consideration of relevant factors, are:

| | |
|---|---|
| Eugene Kojan | $ 4,320.00 |
| Kass Green | $ 3,095.00 |
| Dr. Robert Curry | $ 2,675.00 |

The record shows that the following awards for other litigation expenses are reasonable:

| | |
|---|---|
| Michael R. Sherwood | $ 164.00 |
| Marilyn B. Miles | $ 1,492.00 |

Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' petitions for attorney fees pursuant to 28 U.S.C. § 2412(b) and 33 U.S.C. § 1365(d) are granted.

IT IS HEREBY FURTHER ORDERED that the conservation plaintiffs be awarded $21,905.00 in attorney fees; $18,915.00 to Michael R. Sherwood and $2,990.00 to Julie E. McDonald.

IT IS HEREBY FURTHER ORDERED that the Indian plaintiffs be awarded $ 12,521.00 in attorney fees; $ 7,230.00 to Marilyn B. Miles, $ 2,275.00 to George Forman, and $ 3,016.00 to David J. Rapport.

IT IS HEREBY FURTHER ORDERED that conservation plaintiffs be awarded $10,090.00 in expert witness fees.

IT IS HEREBY FURTHER ORDERED that plaintiffs be awarded $1,656.00 in other expenses; $164.00 to Michael R. Sherwood and $1,492.00 to Marilyn B. Miles.

IT IS HEREBY FURTHER ORDERED that, except as otherwise provided, plaintiffs' petitions for attorney fees and expenses are denied.

---

**4.** This includes an additional 86.25 hours covered by a supplemental fee application.